## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Charles R. Stringer,

                Plaintiff,

       v.

Stan Koch & Sons Trucking,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-3843 ADM/JJG

---

George H. Smith, Esq., Trawick & Smith, P.A., Minneapolis, MN, argued for and on behalf of Plaintiff.

William L. Davidson, Esq., Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On December 1, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Stan Koch & Sons Trucking's ("Koch" or "Defendant") Motion for Summary Judgment [Docket No. 14]. In his Complaint [Docket No. 1], Plaintiff Charles R. Stringer ("Stringer" or "Plaintiff") alleges disability discrimination and failure to accommodate, obstruction of workers' compensation benefits, defamation, and race discrimination. For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted.

## II. BACKGROUND

In August 1994, Stringer was hired by Koch as a driver. Rihanek Aff. [Docket No. 18] Ex. 1. When he was hired, Stringer received Koch's Driver's Manual, which listed responsibilities for drivers, including:

> Ensure that shipping documentation (e.g., manifest, security seal sheet, bills of lading, shipping orders or freight bills, etc.) required to move with shipments is available for inspection and that appropriate paperwork accompanies shipment when delivered.

> Maintain records required for compliance with State and Federal regulations including driver's logs, records of fuel purchases, mileage records, and other records required by law.
>
> Perform all duties in accordance with company policies and procedures, and comply with all Federal, State, and local regulations for the safe operation of a commercial motor vehicle.

Rihanek Aff. Ex. 2.  Stringer testified that he was aware of Koch's policy of procuring a signed bill of lading on every job.  Stringer Dep. (Rihanek Aff. Ex. 3) at 132.  On June 26, 2002, Stringer signed a certification page for the latest version of the manual.  Rihanek Aff. Ex. 4.  The certification page stated "that failure to comply with the Federal Regulations and the instructed and written Company policies will result in disciplinary action up to and inclusive of possible termination of employment or lease cancellation."  Id.

On December 1, 1996, Stringer suffered injuries when he fell entering a truck.  Rihanek Aff. Ex. 5.  Stringer filed a workers' compensation claim for his back injury.  Stringer alleges that Koch failed to offer him office work while he was injured, a practice that Stringer claims was extended to injured white employees.  Stringer Dep. at 43-44.  Instead, Stringer was offered a security position in the trailer yard, the duties of which included fueling and moving trucks around the yard.  Id.  Rather than take this position, Stringer took a leave of absence without requesting indoor duties.  Id.

Prior to his injury, Stringer mainly drove regional routes.  Id. at 30.  After his injury, Stringer performed both city driving and over-the-road driving.  Id. at 95.  During his last year at Koch, Stringer, due to his back problems, was limited to metropolitan area driving.  Id. at 95-96.  Although Stringer still suffered pain from his injuries, he was able to drive because the sleeper in his rig afforded him a place to rest if he became tired.  Id. at 50.

Following his injuries of December 1, 1996, through his termination on November 23, 2003, Stringer received treatment from several doctors.  Id. at 39.  Stringer's workers' compensation paid for much of this treatment.  Id.  In 2001, Stringer underwent arthroscopic surgery on his knee.  During the recovery time, Stringer received disability pay from Koch.  Id. at 40-41.  In November 2002, Stringer filed a second workers' compensation claim based on the knee surgery.  Id. at 41.  Stringer alleged that the knee surgery related back to the December 1, 1996 accident.  Id.

Stringer alleges that following the filing of his workers' compensation claim in November 2002, Koch began harassing him.  Id. at 41-42.  First, Stringer contends he was targeted for an excessive number of random drug tests.  Id. at 52.  Additionally, Stringer claims Koch's safety director was consistently "watching" him.  Id. at 57.  Stringer did not voice his concerns regarding the safety director to Koch, however.  Id. at 57-59.  On April 24, 2003, Stringer was disciplined by the safety director for failure to pre-check a load.  Rihanek Aff. Ex. 7.  Finally, Stringer claims that Director of Operations Mark Davis harassed Stringer for reporting Davis to the Department of Transportation ("DOT") for requiring Stringer to work in excess of fifteen hours, which violated DOT rules.  Stringer Dep. at 97.

On April 17, 2003, Koch received a claim from a customer in Ladysmith, Wisconsin, to whom Stringer regularly delivered.  Id. at 32; Rihanek Aff. Ex. 8.  The claim asserted the customer had failed to receive a load for which they were billed.  Stringer Dep. at 107; Ex. 8.  Koch researched the claim, and discovered that Stringer had not submitted a signed bill of lading for the delivery.  Rihanek Aff. Ex. 9.  Consequently, Koch incurred a loss of $2,500.00.  Because of the loss, Davis determined in November 2003 that Stringer should be terminated. Davis Dep.

(Rihanek Aff. Ex. 10) at 12.  Stringer's termination document also lists five accidents Stringer was involved in during his employment at Koch.  Rihanek Aff. Ex. 7.  Four of the accidents are designated as "preventable."  Id.

Koch reported Stringer's termination to DAC Services, a company that tracks trucker's histories with employers.  Stringer Dep. Ex. 4.  On its report to DAC, Koch related that Stringer was employed by Koch from August 1994 to November 2003.  Additionally, the report included the information that Stringer was terminated, and that his work record contained a cargo loss and a company policy violation.  Id.  Finally, Koch reported to DAC two of the accidents listed as preventable.  Id.

After his termination, Stringer filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  Rihanek Aff. Ex. 12.  The complaint states that, following his injury, Stringer was disabled, and was harassed because of his disability.  Id.  The complaint lists excessive drug testing and increased scrutiny of his performance as evidence of harassment.  Id.  The complaint alleges that Ted Williams, a black Koch employee, as well as several white Koch employees, were not terminated for failing to produce signed bills of lading.  Id.  The EEOC complaint concludes by expressing Stringer's belief that he was discriminated against because of his race and disability.  Id.

On October 1, 2004, Stringer's second workers' compensation claim was heard.  Rihanek Aff. Ex. 6.  On November 29, 2004, Compensation Judge Kathleen Behounek issued a Findings and Order concluding that Stringer's termination was not related to his work injury.  Rihanek Aff. Ex. 13.  Furthermore, Judge Behounek found that Stringer's knee pain was not related to the December 1, 1996 injury.  Id.

4

## III. DISCUSSION

### A.     Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B.     Disability Discrimination and Failure to Accommodate

First, Stringer alleges he was discriminated against because of his disability.  Additionally, he claims Koch failed to accommodate his disability.  Stringer's allegations are asserted under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA").  The burden shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), applies to Plaintiff's claims under the ADA and MHRA.  Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005).  In the first step of the McDonnell Douglas framework, Stringer must demonstrate a prima facie case under the ADA.  Under the ADA, Stringer is required to show he was (1) disabled within the meaning of the

5

ADA; (2) qualified to perform the essential functions of his job, with or without reasonable accommodations; and (3) suffered an adverse employment action under circumstances giving rise to an inference of disability discrimination.  Taylor v. Nimock's Oil Co., 214 F.3d 957, 959-60 (8th Cir. 2000).  Because Stringer has not presented facts sufficient to demonstrate he was disabled within the meaning of the ADA, Koch's Motion must be granted.

Under the ADA, a disability is shown if one can demonstrate that he (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; or (3) is regarded by the employer as having such an impairment.  42 U.S.C. § 12102(2).  Of the major life activities defined by federal regulations, Stringer does not allege that any are restricted.  However, Stringer's Complaint does repeatedly cite incidents at Koch regarding his employment; therefore, the Court will construe Stringer's Complaint to allege a restriction of work.  Work is regarded as a major life activity.  29 C.F.R. § 1630.2(i).  A showing that one is restricted or substantially limited in working requires a demonstration that a person's overall employment opportunities are limited.  Id. at § 1630.2(j)(3)(i); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996).

Stringer has not presented sufficient evidence to demonstrate he has been substantially limited from working.  Although Stringer took a leave of absence immediately following his back injury in 1996, he returned to drive trucks for Koch.  Stringer also testified that he was able to perform his duties when Koch switched him from an over-the-road driver to a metropolitan driver in a truck that contained a sleeper.  Stringer Dep. at 50.  Moreover, Stringer stated that at the time of his termination, he was capable of performing his job.  Id.  Finally, Stringer's physician, Dr. Robert G. Jacoby, stated that, following Stringer's accident, he had "not placed

any formal restrictions on him, however, I have asked him to avoid performing repetitive activities that cause significant flare-ups of pain.   However, I have asked him to continue to perform as many daily activities as possible, even if these activities cause mild discomfort so he can lead as normal a life as possible."  Compl. Ex. A; Pl's Mem. in Opp. to Def's Motion for Summ. J. [Docket No. 21] Ex. A.  Although Dr. Jacoby placed Stringer on mild, informal restrictions, including limitations on hours to be worked consecutively as well as a suggestion to drive in-town, at no point in his report did he suggest Stringer was incapable of performing his job as a trucker, or other types of employment.  Id.

Stringer has offered no evidence to suggest he was more limited in his ability to work than Dr. Jacoby's report, his own testimony, and his work history evidences.  As a result, insufficient evidence exists to find that Stringer was restricted or substantially limited in his ability to work.  See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195-96 (2002) ("'substantially limit[ed]' means '[u]nable to perform a major life activity that the average person in the general population can perform'; or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to  the condition, manner, or duration under which the average person in the general population can perform that same major life activity'") (quoting 29 C.F.R. § 1630.2(j)). Perhaps most significantly, Stringer remaining on the job for seven years following his accident demonstrates his ability to continue to perform his duties as a trucker.  Based on the record, the undisputed facts demonstrate that Stringer was not disabled as defined by the ADA.  Therefore, Stringer's disability and accommodation claims must fail, as he can not establish a prima facie case that he is disabled.

7

C.       Retaliation[1]

Stringer also alleges claims of retribution and reprisal.  Specifically, Stringer avers that the stated reason for his termination, his failure to obtain a bill of lading, was pretextual, and that the true reason for his termination was racial discrimination.  Compl. ¶¶ 34-37.

As an initial matter, an issue exists as to whether Stringer's claim is time barred due to his failure to pursue administrative remedies.  It is well established that to bring claims under Title VII a plaintiff must first exhaust all administrative remedies.  Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994).  In this context, to exhaust administrative remedies, Stringer was required to timely file a charge of retaliation or reprisal with the EEOC or the Minnesota Department of Human Rights and obtain a right-to-sue letter.  Id.  In addition to setting forth a specific allegation, the appropriate box for retaliation must be checked on the form to maintain a complaint on those grounds.  Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002) ("the completion of that two-step process constitutes exhaustion only as to those allegations set forth in the EEOC charge and those claims that are reasonably related to such allegations").  Although EEOC charges are to be construed liberally, courts should not allow a complaint "to encompass allegations outside the ambit of the predicate EEOC charge" because of the fear that this "would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure

---

[1] Stringer's Complaint was apparently filed with one page missing.  That page appears to have contained the third count of Stringer's allegations, which is a claim of retaliation.  The Court has not been provided with the missing page, however, the parties have briefed the issues surrounding the retaliation count.  As the Court has been able to ascertain the substance of the third count, and the matter is disposed of on grounds unrelated to the wording of the Complaint, it will be ruled upon here.

to file a timely EEOC charge." <u>Dorsey v. Pinnacle Automation Co.</u>, 278 F.3d 830, 838 (8th Cir. 2002). The statute of limitations for federal retaliation claims is 300 days; the statute of limitations for state claims is one year. 42 U.S.C. § 2000e-5; Minn. Stat. § 363A.28 subd. 3.

In the instant case, Stringer did not check the retaliation box on his EEOC complaint. Rihanek Aff. Ex. 12. The EEOC charge also does not allege that Stringer was terminated or retaliated against for filing a workers' compensation claim or requesting accommodations, but rather indicates he was harassed and terminated based on his race and disability. <u>Id.</u> No mention of Stringer's workers' compensation claim was made in the EEOC complaint. <u>Id.</u> Therefore, Stringer has failed to exhaust his administrative remedies in regard to his retaliation claim. Moreover, because the statute of limitations on federal retaliation claims is 300 days and the statute of limitations for state claims is one year, Stringer has far exceeded the statute of limitations for filing a retaliation claim with the EEOC, as he was terminated in November 2003. 42 U.S.C. § 2000e-5; Minn. Stat. § 363A.28 subd. 3. As a result, Stringer's retaliation claim fails.

**D.      Obstruction of Workers' Compensation Benefits**

Next, Stringer claims that Koch obstructed his efforts to obtain workers' compensation in violation of Minn. Stat. § 176.82, which states in relevant part: "Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee . . . ." Koch argues that because Stringer was terminated for the lost load incident, this claim fails. Moreover, Koch avers this claim is subject to res judicata, because it was previously decided by Judge Behounek in her Findings and

Order on Stringer's workers' compensation claim.  The Findings and Order found, among other things, that Koch terminated Stringer "for reasons unrelated to the work injury."  Rihanek Aff. Ex. 13.

Res judicata prevents the "re-litigation of a claim on grounds that were raised or could have been raised in the prior suit."  Banks v. Int'l Union Elec., Elec., Technical, Salaried and Machine Workers, 390 F.3d 1049, 1052 (8th Cir. 2004).  In Minnesota, res judicata applies to administrative decisions in which the agency in question has acted in a judicial or quasi-judicial capacity.  Graham v. Special Sch. Dist. No. 1, 472 N.W.2d 114, 115-16 (Minn. 1991).  Given proper due process protections, this principle has been applied to workers' compensation courts. Brix v. Gen. Accident & Assurance Corp., 93 N.W.2d 542, 545-46 (Minn. 1958).

Before Judge Behounek, issues related to Stringer's workers' compensation claims were litigated.  Rihanek Aff. Ex. 13.  During the hearing, testimony was taken and records were presented regarding Stringer's workers' compensation claim and his termination.  An examination of the hearing transcript reveals the due process safeguards employed during the hearing, including stipulations and objections on hearsay, foundation, and admissibility grounds. Rihanek Aff. Ex. 6 at 12-17, 30, 41, 102, 107-08, 113.  Thus, Judge Behounek's Findings and Order are subject to res judicata preclusive effect.

Although Stringer argues that the finding that he was terminated for reasons unrelated to his workers' compensation claim was not a central holding of Judge Behounek's Findings and Order, the finding was an integral part of the holding.  Whether Stringer was fired in retaliation for his workers' compensation claims was an important issue in whether his workers' compensation claim was denied.  As a result, res judicata prevents Stringer from now claiming

10

that his workers' compensation claim was obstructed by his termination.  Koch's Motion is granted.

E.     **Defamation**

Stringer alleges that Koch defamed him by reporting his termination to DAC Services. "Defamation ordinarily is established by proof of a statement communicated to someone other than the claimant that is false and that harmed the claimant's reputation and esteem in the community."  Minnwest Bank Cent. v. Flagship Props. LLC, 689 N.W.2d 295, 301 (Minn. Ct. App. 2004) (citing Weinberger v. Maplewood Review, 668 N.W.2d 667, 673 (Minn. 2003)).  To survive Koch's Motion, Stringer must demonstrate the existence of disputed material facts related to whether Koch knew, or in the exercise of reasonable care, should have known that the defamatory statements in question were false.  Jadwin v. Minneapolis Star and Tribune Co., 367 N.W.2d 476, 480 (Minn. 1985).  Stringer claims that Koch's statement to DAC Services that Stringer "lost a load" was defamatory.

Stringer has failed to present any material facts creating a dispute as to whether he indeed lost a load.  The only facts presented have been provided by Koch.  Koch's documentation indicates a Ladysmith, Wisconsin customer claimed a load was not delivered, and Stringer was unable to produce a signed bill of lading he was required to obtain.  Rihanek Aff. Exs. 8-9.  In the absence of any contradictory evidence, this leads to the conclusion that Stringer did, in fact, lose the load in question.  Stringer's only defense is his own contention that he did not lose the load.  However, mere allegations are not sufficient to survive summary judgment.  Krenik, 47 F.3d at 957. Additionally, Stringer has failed to raise a factual dispute as to whether his reputation in the community was damaged as a result of Koch's alleged defamation.

11

Consequently, Stringer's defamation claim can not survive Koch's Motion.

**F.     Race Discrimination**

Finally, Stringer alleges he was fired in violation of 42 U.S.C. § 2000 E-4 and the Minnesota Human Rights Act.  Under <u>McDonald Douglas</u>, a prima facie case of race discrimination in employment consists of a showing that the plaintiff: (1) belongs to a racial minority; (2) was qualified for a job for which the employee was performing; (3) sustained an adverse employment action or was terminated because of his class; and (4) was replaced by a non-member of the protected class and was not subject to adverse employment action.  411 U.S. at 802.[2]  Because Stringer has not presented evidence that he was fired because of his race, his claim must be denied.

Although Stringer alleges that some white employees were not terminated for failing to obtain signed bills of lading, to show a prima facie case of race discrimination, he must show that the white employees were similarly situated in all aspects.  "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of 'comparable seriousness.'"  <u>Bogren v. Minnesota</u>, 236 F.3d 399, 406 (8th Cir. 2000).  Here, Stringer was not terminated solely for failing to produce a bill of lading.  Rather, he was terminated for losing a load, which ultimately resulted in a financial loss for Koch.  Thus, Stringer's incident was more serious than the failure of other employees to turn in bills of lading where no loss resulted. Moreover, Stringer has presented no evidence, beyond his mere allegations, that white employees were treated differently in this regard than black employees.  Because he has not

---

[2] Minnesota Human Rights Act claims are also analyzed pursuant to Title VII standards. <u>Mems v. City of St. Paul, Dept. of Fire and Safety Servs.</u>, 224 F.3d 735, 738 (8th Cir. 2000).

presented any material facts to dispute Koch's reason for his termination, Stringer's race

discrimination claim fails.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant Stan Koch & Sons Trucking's Motion for Summary

Judgment [Docket No. 14] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 27, 2006.

13